# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1006

_____

United States of America,

        Appellee,

v.

Christopher J. Morris,

        Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the Western
District of Missouri.

_____

Submitted: June 13, 2006
Filed: August 15, 2006

_____

Before SMITH, HEANEY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Christopher J. Morris pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The district court sentenced Morris to 188 months' imprisonment. Morris appeals his sentence, challenging the district court's conclusion that Morris was not entitled under U.S. Sentencing Guidelines Manual § 5G1.3(b) (2004) to credit for the time he already served on a Missouri sentence for conduct relevant to the instant offense. For the following reasons, we vacate the sentence and remand for resentencing.

## I.    BACKGROUND

On May 14, 2003, Morris burglarized a home in Lafayette County, Missouri, and stole five firearms. Morris later pled guilty to burglary and receipt of stolen property in Missouri state court (the "Lafayette County conviction") and was sentenced to seven years in state custody. Also on May 14, Morris pawned in Independence, Missouri, a stolen Mossberg shotgun, two of the firearms stolen from Lafayette County, and one other firearm. Morris's possession of the Mossberg shotgun is the subject of the indictment and conviction in this case.

Morris was serving prison sentences for the Lafayette County conviction and other Missouri convictions at the time of his indictment in this matter. After his indictment, Morris was transferred to federal custody pursuant to a writ of habeas corpus ad prosequendum. He entered a guilty plea without a plea agreement, and the district court ordered the preparation of a presentence investigation report ("PSR"). The PSR presented two sentencing guidelines calculations for Morris's offense, both of which resulted in an offense level of 31.

First, the PSR calculated Morris's offense level under Chapters Two and Three of the sentencing guidelines. In doing so, the PSR recommended Chapter Two adjustments based on relevant conduct, including the conduct underlying the Lafayette County convictions. The PSR assigned Morris a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2). Two levels were added pursuant to § 2K2.1(b)(4) "because the firearm had been stolen." PSR ¶ 20. Four more levels were added pursuant to § 2K2.1(b)(1)(A) because Morris "was in possession of a total of 8 firearms on May 14 and 15, 2003," which included firearms stolen in Lafayette County. PSR ¶ 21. Four additional levels were added pursuant to § 2K2.1(b)(5) because Morris possessed two firearms in connection with the felony offense of stealing the firearms in Lafayette County. PSR ¶ 22. After a three-level reduction pursuant to U.S.S.G. § 3E1.1 for

acceptance of responsibility, this calculation resulted in a total offense level of 31. There were no objections to any of these calculations or underlying factual determinations.

Alternatively, the PSR recommended classifying Morris as an Armed Career Criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. The PSR calculated a Chapter Four offense level of 34 pursuant to § 4B1.4(b)(1) ("the offense level applicable from Chapters Two and Three") and a total offense level of 31 after a three-level reduction for acceptance of responsibility.

The PSR also noted a potential issue involving § 5G1.3, to which Morris objected. Section 5G1.3(b) provides that if the conduct underlying Morris's Lafayette County conviction "is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and . . . was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)," then Morris's sentence for the federal offense "shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment" for his Lafayette County conviction, and the "court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." § 5G1.3(b). However, if § 5G1.3(b) does not apply, then § 5G1.3(c) gives the sentencing court discretion to impose a concurrent, partially concurrent, or consecutive sentence "to achieve a reasonable punishment for the instant offense." § 5G1.3(c).

At sentencing, the district court overruled Morris's objection to its refusal to take into account the Lafayette County conviction as relevant conduct. The district court explained that it was "not going to consider those [state] cases as relevant

conduct" but "rather [was] going to treat Mr. Morris as an armed career criminal." In order to factor out the Lafayette County relevant conduct, the district court utilized § 4B1.4(b)(3)(B) to determine that Morris's base offense level was 33 and that his total offense level was 30 after a three-level reduction for acceptance of responsibility. With a criminal history category of VI and a mandatory minimum sentence of 180 months, the resulting sentencing range was 180 to 210 months. The district court considered the 18 U.S.C. § 3553 factors and sentenced Morris to 188 months' imprisonment. Since it did not utilize the Lafayette County conviction as relevant conduct in determining Morris's guidelines range, the district court exercised its discretion pursuant to § 5G1.3(c) to run the sentence concurrently to Morris's term of imprisonment for the Lafayette County conviction and refused to give Morris credit for the time he already served on his Lafayette County conviction.[1]

On appeal, Morris argues that the district court should have sentenced him at the greatest offense level available under § 4B1.4, which in this case is the offense level taking into account the relevant conduct underlying the Lafayette County conviction, and that a proper application of the sentencing guidelines requires the district court to grant him credit for time already served for his Lafayette County conviction pursuant to § 5G1.3(b). We agree that the district court should have considered the relevant conduct and sentenced Morris at offense level 31 and that § 5G1.3(b) applies.

## II.    DISCUSSION

We review the district court's interpretation and application of the sentencing guidelines de novo. *United States v. Vasquez-Garcia*, 449 F.3d 870, 872 (8th Cir.

---

[1]The district court also ordered Morris's sentence to run consecutively to three other Missouri sentences and to run concurrently to one other Missouri sentence imposed after Morris committed the instant offense.

2006). "Sentencing under *Booker* requires, as a 'critical starting point,' that the district court calculate the advisory guidelines sentencing range in the same manner it would have calculated the range under the mandatory Guidelines regime." *United States v. Thomas*, 422 F.3d 665, 669 (8th Cir. 2005). Therefore, an incorrect application of the guidelines "can require remand regardless of whether the resulting sentence was otherwise reasonable." *United States v. Donelson*, 450 F.3d 768, 774 (8th Cir. 2006).

The district court calculated Morris's offense level to be 33 as an armed career criminal and his total offense level to be 30 after a three-point downward adjustment for acceptance of responsibility. Morris contends that the district court violated U.S.S.G. §§ 1B1.3 and 5G1.3(b) by excluding the relevant conduct underlying the Lafayette County conviction from the guidelines calculation. He takes this position because if the Lafayette County conviction is considered "relevant conduct . . . that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)," § 5G1.3(b), then he is entitled to credit for time already served on the Lafayette County conviction pursuant to § 5G1.3(b). The Government asserts that the district court properly chose not to consider the Lafayette County conviction in calculating Morris's offense level based on his status as an armed career criminal under § 4B1.4(b)(3)(B) and that § 5G1.3(b) does not apply.

We conclude that the district court erred in its application of the armed career criminal guideline because § 4B1.4(b) requires the district court to choose the greatest offense level among the listed options, which in this case is 31 under § 4B1.4(b)(1). As a consequence, the district court applied the wrong guidelines sentencing range and failed to adjust Morris's sentence for the period of imprisonment already served for his Lafayette County conviction, provided that "the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." § 5G1.3(b).

The armed career criminal guideline, § 4B1.4, requires the district court to choose the greatest of four possible offense level calculations.[2] Two of the options, § 4B1.4(b)(2) and § 4B1.4(b)(3)(A), do not apply to Morris. Section 4B1.4(b)(2) is inapplicable because Morris does not qualify as a career offender for the instant offense. Section 4B1.4(b)(3)(A) applies only to the particular firearm upon which the instant conviction is based. *United States v. Mann*, 315 F.3d 1054, 1056 (8th Cir. 2003) (contrasting § 4B1.4(b)(3)(A) with the § 2K2.1(b)(5) enhancement, which applies to "any" firearm). In this case, "the firearm" is the Mossberg shotgun, the subject of Morris's federal conviction. The district court did not make a finding that Morris used or possessed the Mossberg shotgun "in connection with" the burglary in Lafayette County or any other crime of violence.

_____

[2]The armed career criminal guideline provides:

(b)  The offense level for an armed career criminal is the *greatest of*:

  (1)  the offense level applicable from Chapters Two and Three; or

  (2)  the offense level from § 4B1.1 (Career Offender) if applicable; or

  (3)  (A)  34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a)*; or

  (B)  33, otherwise.*

  *If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

§ 4B1.4(b) (emphasis added).

Morris's offense level based upon the third option is 30 because § 4B1.4(b)(3)(B) specifies that the given offense level of 33 is to be reduced for acceptance of responsibility, if applicable. The fourth option for the offense level for an armed career criminal is "the offense level applicable from Chapters Two and Three." § 4B1.4(b)(1). When determining the offense level under Chapters Two and Three, U.S.S.G. § 1B1.3 directs that it "shall be determined on the basis of" relevant conduct. Therefore, the district court does not have the option of ignoring the Lafayette County relevant conduct when calculating the offense level under § 4B1.4(b)(1). The PSR identified a total offense level of 31 using the Lafayette County relevant conduct under Chapter Two and reducing three levels for acceptance of responsibility under Chapter Three.[3] Morris's offense level pursuant to § 4B1.4(b)(1) is 31.

The district court was then required to choose the greatest offense level under § 4B1.4(b). Because the offense level of 31 calculated under § 4B1.4(b)(1) was the greatest of the four options, the court should have determined the guidelines sentencing range based on a total offense level of 31 instead of 30. The guideline calculation under § 4B1.4(b)(1) is based on the adjustments under Chapters Two and Three, which necessarily includes adjustments under § 2K2.1 based on the Lafayette County conviction. Because the Lafayette County conviction was required to be taken into account as relevant conduct to the instant offense and was the basis for an increase in his offense level under § 2K2.1(b), § 5G1.3(b) applies to Morris. *See* § 5G1.3(b).

---

[3]When the PSR calculated Morris's offense level under the armed career criminal guideline, it determined that the offense level was 34 under § 4B1.4(b)(1) and then subsequently reduced the offense level by three for acceptance of responsibility. Because the guideline for acceptance of responsibility, § 3E1.1, is located in Chapter Three, and § 4B1.4(b)(1) requires the determination of the offense level applicable from Chapters Two and Three, we find that the offense level under § 4B1.4(b)(1) is 31, not 34.

We remand for resentencing because we cannot say based on this record that the combined errors of miscalculating the guidelines sentencing range and failing to apply § 5G1.3(b) did not impact the ultimate sentence imposed by the district court. *See United States v. Lindquist*, 421 F.3d 751, 757 (8th Cir. 2005) (explaining that remand is not required where an error in the application of the guidelines was harmless). On remand, the district court should apply the guidelines sentencing range corresponding to offense level 31 and should grant Morris an adjustment of his sentence for time served on his Missouri state conviction for burglary and receipt of stolen property pursuant to § 5G1.3(b) "if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."

## III. CONCLUSION

For the reasons set forth above, we vacate the sentence and remand the case to the district court for resentencing consistent with this opinion.

_____